FILED

AUG 0 3 2017

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| Carla Johnson, individually, and Carla Johnson, as Executrix of Alice A. Trevino Estate, <br><br> Plaintiffs, <br><br> v. <br><br> Citigroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through Certificates, Series 2007 AMC2; U.S. Bank National Association, As Trustee By and Through Its Attorney-In-Fact CitiMortgage, Inc.; Deborah Martin; Terri Martin; Alexis Martin; Cassie Martin; Troy Martin; Shelby Martin; and Deanna Ray <br><br> Defendants. | Civil Action No.5:16-cv-1114-RCL |

## MEMORANDUM OPINION

Before the Court are plaintiffs' Motion to Remand under U.S.C. § 1447(c), filed December 7, 2016, and defendants CitiMortgage and U.S. Bank National Association's Motion to Dismiss First Amended Complaint Pursuant to Federal Rule of Procedure 12(b)(6), filed December 5, 2016. Having considered the motions, responses, replies, exhibits, filings, and applicable law, the Court will deny plaintiff's motion to remand, and grant defendants' motion to dismiss.

## I.    BACKGROUND

In 1974, Alice A. Trevino was granted and conveyed the real property located at 550 Villaret Boulevard, San Antonio, Texas 78221. On September 6, 2006, Ms. Trevino executed a Texas Home Equity Note and the connected Texas Home Equity Security Instrument with Argent

1

Mortgage Company, LLC. The principal amount of this Note was $74,000.00. Together with the note and security instrument, Trevino signed an affidavit acknowledging the fair market value of the home to be $92,500.00. Argent Mortgage signed a Corporate Assignment of Deed of Trust to Mortgage Electronic Registration Systems, Inc. on January 13, 2009. Alice A. Trevino died on January 22, 2010, and bequeathed the property to Carla Johnson, her daughter. Johnson was apparently both the owner of the property and the independent administrator of Trevino's estate. Later, on December 3, 2010, Mortgage Electronic Registration Systems assigned and transferred the Note and Deed of Trust to defendant CitiMortgage, Inc.

On May 2, 2012, CitiMortgage sent a letter notifying Johnson that the loan was in default and that CitiMortgage intended to accelerate the note if she failed to cure the default by June 7, 2012. On January 17, 2014, CitiMortgage filed an application for foreclosure on the property under Rule 736 in the 150th District Court of Bexar County. ECF No. 16–3. In that application, Cause No. 2014CI00801, CitiMortgage affirmed that debt was in default, and that "[t]he requisite notice(s) to cure the default and accelerate the maturity of the debt have been mailed . . . as required under applicable law." ECF No. 16–3. CitiMortgage, in the application, purported to accelerate the debt and seek an order authorizing foreclosure. *Id.* The Court is unclear how that proceeding was resolved, but the case was dismissed according to the Bexar County dockets (available at https://apps.bexar.org/dklitsearch/search.aspx).

Hughes, Watters & Askanase, LLP, a law firm in Houston representing CitiMortgage, sent a letter dated December 11, 2015, declaring that their client "hereby accelerates" the loan and that the entire balance—which was not listed—was due in full. Am. Compl. 5, ¶ 16, ECF No. 6. A statement dated November 21, 2016 listed the amount due at $105,684.52,which consisted of the $78,485.34 principal, $14,079.04 in interest, $10,801.90 in escrow, $70.81 in fees, and $2,247.43

in past due fees. Ex. F, ECF No. 6–1. That statement also states that the loan had been accelerated, and the total amount was due. *Id.* A second letter was sent on December 30, 2015, notifying Johnson that failure to cure the default by February 3, 2016 "will result in an acceleration of the loan." Ex. G, ECF No. 6. To cure the debt, the December 30, 2015 letter demanded $52,014.21: "the past due amount of $47394.80, including $50.86 in late charges and $4568.65 in delinquency related expenses." *Id.*

In her amended complaint, Johnson claims that the note was in fact accelerated long before the second December 2016 letter. Regardless of that sequence, the default was not cured, and on June 14, 2016 defendants apparently filed an application for foreclosure on the property under Rule 736 in the 408th District Court of Bexar County. ECF No. 10–1. According to Johnson, the foreclosure sale was noticed for November 1, 2016.

Johnson sued defendants in the 166th Judicial District Court of Bexar County, Texas on October 31, 2016. The original complaint sued Citigroup Mortgage Loan Trust Inc., U.S. Bank National Association (as Trustee), as well as "substitute trustee defendants" Deborah Martin, Terri Martin, Alexis Martin, Cassie Martin, Troy Martin, Shelby Martin, and Deanna Ray. The substitute trustees had apparently not yet been served. The state court imposed a Temporary Restraining Order preventing CitiMortgage from holding a foreclosure sale until further proceedings could be held. A week later, on November 7, 2016, defendants CitiMortgage and U.S. Bank National Association removed the case under 28 U.S.C. § 1332(a). CitiMortgage, noting it had been incorrectly sued as CitiGroup Mortgage Loan Trust Inc., and U.S. Bank National Association moved to dismiss on November 11, 2016.

On November 23, 2016, Johnson filed an amended complaint alleging the following claims: violations of Section 50 of the Texas Constitution including wrongful foreclosure, breach

of contract, negligence, usury, unfair debt collection under the Texas Debt Collection Act (TDCA), and a fraudulent claim filed against real property under Texas Civil Practices & Remedies Code Section 12.002. Johnson again leveled these allegations against Citigroup Mortgage Loan Trust Inc., U.S. Bank National Association (as Trustee), and the "substitute trustees." ECF No. 6. The amended complaint also added language that suggested the substitute trustees "will be served with notice of this suit at 1201 Louisiana 28th Floor, Houston, Texas 77002 pursuant to their Notice of Appointment of Substitute Trustee filed for public record in this cause." *Id.* That Houston address appears to be the address of Hughes Watters Askanase, LLP, the Houston-based law firm that Johnson alleges sent the December 11, 2015 letter declaring the maturity and acceleration of the Note. Mot. Remand 3, ¶ 9, ECF No. 13. Summons were issued and returned as executed as to the substitute trustees, ECF Nos. 18–25, at that address. There is no proof of service of the amended complaint as to the substitute trustees. As a result of the amended complaint, this Court denied the first motion to dismiss as moot.

Defendants CitiMortgage and U.S. Bank National Association filed a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 9. Johnson responded by arguing the defendants were precluded from foreclosing on the lien because it took place outside the applicable four-year statute of limitations. ECF No. 16. Specifically, Johnson alleges that CitiMortgage had accelerated the debt and attempted to foreclose in June 2012, and therefore the four-year statute of limitations had run by the time CitiMortgage attempted to foreclose on the property in November 2016. Defendants filed a reply in support of the motion to dismiss, arguing that Johnson failed to raise evidence of an acceleration that would trigger the applicable statute of limitations in June 2012. ECF No. 17.

Johnson also filed a motion to remand under U.S.C. § 1447(c) for lack of diversity jurisdiction, ECF No. 13. Specifically, Johnson argued that the substitute trustees were non-diverse parties because they were citizens of Texas. Defendants CitiMortgage and U.S. Bank National Association responded to the motion to remand by arguing that the substitute trustees were improperly joined to defeat diversity and should not be considered in diversity analysis. ECF No. 14.

## II.    LEGAL STANDARD

### A.    Motion to Remand and Improper Joinder

When analyzing claims of improper joinder, the Court must first examine the statutes authorizing the removal of the case to federal court. The federal removal statute allows the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). To remove a case based on diversity jurisdiction, the defendant "must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied." *Smallwood v. Ill. Cent. R. R. Co.*, 385 F.3d 568, 572. 28 U.S.C. § 1332 has been interpreted as requiring complete diversity: diversity does not exist unless each defendant is a citizen of a different State from each plaintiff. *Strawbridge v. Curtiss*, 3 Cranch 267, 20 L.Ed. 179 (1806). However, examining diversity jurisdiction for the purposes of removal only requires the court to consider the citizenship of "parties in interest *properly* joined." 28 U.S.C. § 1441(b) (emphasis added). District courts are prohibited from exercising jurisdiction over a suit in which any party has been improperly joined. 28 U.S.C. § 1359.

The removing party has the "heavy" burden of proving improper joinder. *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 260 (5th Cir. 1995). The Fifth Circuit recognizes two ways to establish improper joinder: (1) actual fraud in the pleading of jurisdictional facts, or (2) inability

of the plaintiff to establish a cause of action against the non-diverse party in state court. *Smallwood* 385 F.3d at 573. The defendants in this case argue that joinder is improper under the second evaluation. In order to demonstrate that joinder is improper, the defendants must show that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.*

In order to make this determination, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* When a court determines a nondiverse party was improperly joined to defeat diversity, that party must be dismissed without prejudice. *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 210 (5th Cir. 2016).

### B.     12(b)(6) Standard

The Federal Rules of Civil Procedure require that a complaint "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under this standard, the complaint must plead facts that allow for a reasonable inference of liability. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal,* 556 U.S. at 678. But the Court must accept as true all factual allegations contained in a complaint. *Id.* The facts, taken as true and construed in the light most favorable to the plaintiff, must raise the right to relief above speculation. *Twombly*, 550 U.S. at 555 (2006). If a plaintiff has failed to state a claim upon which relief may be given, the claim will be dismissed. *Id.*

## III.    ANALYSIS

Before the Court are two motions: (1) defendants' motion to dismiss for failure to state a claim, and (2) plaintiffs' motion to remand for lack of jurisdiction. The Court will take up the jurisdictional matter first.

### A.        Plaintiffs' Motion to Remand

The named defendants in the original and amended complaints are apparently not diverse. CitiMortgage is a corporation whose citizenship for purposes of diversity is determined by the state in which it is incorporated, and the state in which its principal place of business is located. 28 U.S.C. § 1332(c)(1) ("[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."). According to the Notice of Removal, CitiMortgage is incorporated in New York, and its principal place of business is in Missouri. ECF No. 1. Therefore, CitiMortgage is a citizen of New York and Missouri for purposes of diversity.

Johnson additionally brings claims against CitiGroup Mortgage Loan Trust Inc. Asset-Backed Pass-Through Certificates, Series 2007, U.S. Bank National Association, and therefore the citizenship of the Trustee, U.S. Bank National Association, is to be used for purposes of diversity. *See Navarro Sav. Ass'n. v. Lee*, 446 U.S. 458, 462–63 (1980). The trustee, U.S. Bank National Association, is a national bank. National bank citizenship is determined by the state in which its main office, as designated in the articles of incorporation, is located. *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 307 (2006). U.S. Bank's main office is located in Ohio, and therefore U.S. Bank is a citizen of Ohio for purposes of diversity.

The remaining defendants, Deborah Martin, Terri Martin, Alexis Martin, Cassie Martin, Troy Martin, Shelby Martin, and Deanna Ray, are alleged to be resident citizens of Texas but have

7

not appeared here. Carla Johnson is also a resident citizen of Texas.[1] Assuming that the substitute trustees are Texas citizens, complete diversity does not exist because plaintiff and some defendants share citizenship.

Defendants assert that the non-diverse parties Deborah Martin, Terri Martin, Alexis Martin, Cassie Martin, Troy Martin, Shelby Martin, and Deanna Ray, were improperly joined, and there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against them. Given that improperly joined parties must be disregarded when determining whether a matter is removable under diversity jurisdiction, this Court must first determine whether the non-diverse defendants were improperly joined to this action. 28 U.S.C. § 1441(b). If these defendants are dismissed based on the diversity analysis, there is compete diversity and removal was proper.

As noted, to prove improper joinder based on the plaintiff's inability to state a claim against non-diverse defendants, the defendant must show that there is no possibility of recovery by the plaintiff against an in-state defendant. *Smallwood*, 385 F.3d at 573. The determination of improper joinder must be based on the causes of action alleged in the original state-court petition at the time of removal, and is not affected by amended complaints or motions filed after removal to federal court. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Therefore, this Court must analyze the original complaint.

Johnson, in her original complaint, lists the non-diverse parties as defendants, vaguely refers to them as substitute trustees, and then never mentions them again in the substance of the complaint. *See* Compl., ECF No. 1–3. In her complaint, Johnson utterly fails to plead any facts that allow for a reasonable inference of liability regarding the non-diverse parties. The entirety of the complaint focuses on the actions of defendants Citigroup Mortgage and CitiMortgage, Inc.,

---

[1] In cases originally commenced by a decedent's representative, the citizenship of the representative controls for purposes of diversity, rather than the citizenship of the decedent. *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957).

and not a single statement contained within the facts section of the complaint mentions the non-diverse parties. This Court does not see how the non-diverse parties would be able to reasonably infer which of their actions have incurred liability, or determine which of the several claims discussed are levied towards them specifically.

Further, at times the original complaint uses the phrases "defendants" and "both defendants" interchangeably, which leads the Court to believe that the complaint was drafted with only two defendants in mind rather than the nine defendants which were eventually joined in this action. *Id.* at 9. This, combined with the complete lack of any mention of the substitute trustees in either the facts section or any of the subsequent allegations, leads this Court to question whether the seven non-diverse defendants were in fact attached as afterthoughts with the specific and sole purpose of defeating a claim of diversity jurisdiction, thereby forcing this case to be adjudicated in a Texas state court. The original complaint seems to offer no other reason.

Johnson argues in her motion to remand that she alleges that "Substitute Trustees did take action by accelerating the outstanding balance on the note and declaring the note mature." Mot. Remand 8, ¶ 23. But nothing in the original complaint suggests that a claim was asserted directly against the substitute trustees for misconduct on their part, and there appears to be no basis on which to hold these substitute trustees liable for accelerating the note. Johnson's original complaint alleges (1) violations of Section 50 of Article XVI of the Texas Constitution,[2] (2) breach of contract, (3) negligence, (4) usury, (5) violations of the Texas Debt Collection Act (TDCA), and (6) fraud against real property under Texas Civil Practices & Remedies Code Section 12.002.

---

[2] The relevant provision here protects homesteads against forced sales for the payment of an extension of credit that "is of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made" and that "is closed only at the office of the lender, an attorney at law, or a title company." Tex. Const. Art. XVI, § 50(a)(6)(B), (N).

But the substitute trustees did not extend the credit at issue in the alleged constitutional violation, were not parties to any contract with Trevino, and had no relationship with Trevino such that they owed a duty under tort law. "Further, a substitute trustee is not a debt collector or a creditor, and thus Plaintiff cannot assert claims against the Substitute Trustees under the Texas Debt Collection Practices Act." *Eisenberg v. Deutsche Bank Trust Co. Americas*, No. SA–11–CV–384–XR, 2011 WL 2636135, at *3–4 (W.D. Tex. July 5, 2011) (citing Tex. Prop. Code § 51.0075(b), which states "A trustee or substitute trustee is not a debt collector").

The original complaint contains no specific allegations of fraudulent conduct by the substitute trustees, only that "defendants" initiated an illegal loan and filed to foreclose on the property outside the statute of limitations. Orig. Compl. 9. These allegations make no sense if levied against the "substitute trustees," who appear not to have prepared the loan itself or initiated the foreclosure on the property.[3] Ultimately, none of the allegations in the original complaint appear to be recoverable against these additional defendants.

The amended complaint attempts to cure this by adding some reference to specific conduct by the substitute trustees. For example, Johnson alleges that the substitute trustees "were given the power of sale to foreclose on the property in the event of a default by Plaintiff," Am. Compl. 12, ¶ 38, that the power of sale was void, ¶ 39, that "Citimortgage Inc., negligently allowed its substitute trustees to initiate a foreclosure action." ¶ 46. However, these are not allegations that suggest liability under any asserted cause of action, other than perhaps the Texas Debt Collection

---

[3] The June 2016 foreclosure application was submitted by Dominique Varner, Kristen Baker, and Sarah Robbins of Hughes Watters & Askanase. ECF No. 10–1. Thus, even if plaintiff intended to sue the attorneys of Hughes, Watters & Askanase as the "substitute trustees" based on the December 11, 2015 letter sent by the firm, Ex. H, ECF No. 6–1, the defendants named here are not even the ones who initiated the foreclosure. Further, the November 11, 2014 account statement lists a Christopher Williams as the point of contact regarding the loan and Barrett Daffin Frappier Turner & En as the CitiMortgage Foreclosure Attorney. Ex. F, ECF No. 6–1. In contrast to all these individuals named through this foreclosure process, the defendants named in the lawsuit appear nowhere in the record.

Act.[4]  Indeed, the only specific allegation levied against the substitute trustees in the amended complaint is that "Defendant Substitute Trustees engaged in unfair or unconscionable means of debt collection prohibited by the Texas Finance Code." Am. Compl. 16, ¶ 50.  The amended complaint then enumerates the specific conduct constituting violations of the Texas Finance Code:

> Defendant CitiGroup Mortgage created a loan amount against Plaintiff's homestead that exceeded 80 percent of the fair market value of the homestead on the date the extension of credit was made. Therefore, Defendant secured a loan against a homestead in violation of Article XVI, § 50(a)(6)(B) of the Texas Constitution. Defendant sent to Plaintiffs notices of acceleration threatening to foreclose on Plaintiffs' homestead with a constitutionally invalid lien. *See Woods*, 2016 Tex. LEXIS 383 at * 13.  Because Defendants attempted to foreclose on a lien that was not constitutionally valid, then Defendants have threatened to take an action prohibited by law.

> Further, Defendant Substitute Trustees were the agents that initiated the foreclosure suit on CitiGroup Mortgage's behalf.  Defendant Substitute Trustees were acting as debt collectors in attempting to foreclose on the Plaintiff's home.

Am. Compl. ¶ 50–51.

This excerpt suffers from the same problems as the original complaint.  The use of "defendant" when alleging who sent the notices of acceleration suggests that it was done by a single party.  Yet the subsequent sentence suggests *all* "defendants" attempted to foreclose on the allegedly invalid lien.  And then the next sentence suggests it was in fact the substitute trustees— all of them—who initiated the foreclosure suit.  It is, at best, ambiguous what alleged conduct is at issue here.  The allegation of "unfair or unconscionable means of debt collection" provides some guidance, suggesting that Johnson is seeking recovery for a violation of Tex. Fin. Code § 392.303, which prohibits debt collectors from using unfair or unconscionable means that employ certain practices against consumers, such as collecting interest or a fee unless it is expressly authorized by

---

[4] Tex. Fin. Code § 392.403 allows a personal right of action for violations of Chapter 392 of the Texas Finance Code, which provides for consumer protections and outlines prohibited debt collection methods.

an agreement chargeable to the consumer. Critically, none of those practices include instituting a foreclosure action or filing a lawsuit.

The amended complaint also suggests that defendants here could be liable for threatening to take actions prohibited by law, a violation of Tex. Fin. Code § 392.301(a). However, as the Finance Code makes clear, that section "does not prevent a debt collector from . . . threatening to institute civil lawsuits or other judicial proceedings to collect a consumer debt." TEX. FIN. CODE § 392.301(b). To the extent Johnson suggests, therefore, that substitute trustees are liable for threatening to file, or for actually filing, this lawsuit, there appears to be no possibility of recovery under Tex. Fin. Code § 392.301. Johnson also does not allege any fraudulent, deceptive, or misleading representation constituting a violation under Tex. Fin. Code § 392.304. Further, as noted, trustees and substitute trustees are not debt collectors under Texas law. TEX. PROP. CODE § 51.0075.

The clarity of allegations in the amended complaint are further undermined by Johnson's attached exhibits, which do not mention the specifically named substitute trustees *at all*. The deed of trust names a Trustee—Lawrence Young—but not a substitute trustee. Deed of Trust 1, ECF No. 6–1. And though the deed of trust allows for the appointment of substitute trustees at the option of the lender, there is no indication that this option was actually exercised. *Id.* at ¶ 28. Further, the deed of trust states that a trustee "shall not be liable if action upon any notice, request, consent, demand, statement or other document believed by Trustee to be correct." *Id.* Thus, even if the lender here did appoint substitute trustees, and even if the substitute trustees did initiate the foreclosure proceedings, the deed of trust explicitly waives their liability unless they acted with knowledge that the lien here was void. There is no such allegation.

12

Johnson also argues that the substitute trustees that the state court recognized them as properly joined because the additional defendants were included in the state court's restraining order. *Id.* But when issuing a TRO, Texas courts do not analyze the merits of the case, but merely assess whether an immediate and irreparable injury, loss, or damage will result if the TRO is not issued. TEX. R. CIV. P. 680. In this case the state court determined that there was sufficient possibility of such an injury as the result of the foreclosure, but made no determination whatsoever regarding the merits of the case generally or the claims against particular defendants specifically. TRO 2, ECF No. 1–4. Therefore, the inclusion of the non-diverse defendants in the TRO has no bearing whatsoever on the determination of proper or improper joinder.

Ultimately, this Court cannot discern why these additional defendants are part of the suit. While Johnson hints at a notice identifying these defendants as substitute trustees, none has been included in the record here. Defendants are not named in the deed of trust as trustees and none of the attached documents reference them. There is no indication that these defendants prepared, initiated, or participated in the foreclosure action, or that the sale was to be conducted by these substitute trustees. Coupled with the lack of any overt reference to these defendants in the original complaint, the lack of any reference to *any* of the seven defendants within the attached exhibits suggests that these defendants were not substitute trustees and that there are no claims recoverable against these defendants.

Based on the foregoing, this Court finds that Johnson has failed to state a claim against non-diverse parties, and that therefore no reasonable basis for the district court to predict that the plaintiffs here might be able to recover against those defendants. Accordingly, the Court finds that the defendants were improperly joined. Since the defendants were improperly joined, defendants

are entitled to have the claims against Deborah Martin, Terri Martin, Alexis Martin, Cassie Martin, Troy Martin, Shelby Martin, and Deanna Ray, dismissed without prejudice.

Without these additional defendants, there is complete diversity between the plaintiffs and defendants. Therefore, Johnson's motion to remand will be denied.

### B.        Motion to Dismiss First Amended Complaint

Defendants CitiMortgage and U.S. Bank National Association moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Specifically, defendants argued that there is no separate constitutional recourse for violations of the Texas Constitution, and that borrowers alleging unconstitutional liens under Article XVI, § 50 must rely on traditional tort or breach of contract actions. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 484 (Tex. 2016) ("The terms and conditions required to be included in a foreclosure-eligible home-equity loan are not substantive constitutional rights, nor does a constitutional forfeiture remedy exist to enforce them."); *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 546 (Tex. 2016) (affirming *Garolofo*'s holding that the Texas Constitution does not create rights beyond a defense to foreclosure). According to CitiMortgage, the statutes of limitations on those causes of action have run. The Court addresses each cause of action.

### 1. Violation of Texas Constitution Article XVI, Section 50(a)(6).

The Texas Constitution provides that homesteads are protected from forced sales except under certain circumstances. One exception is for extensions of credit secured by a voluntary lien against the homestead, so long as it is:

> of a principal amount that when added to the aggregate total of the outstanding principal balances of all other indebtedness secured by valid encumbrances of record against the homestead does not exceed 80 percent of the fair market value of the homestead on the date the extension of credit is made

14

Tex. Const. art. XVI, § 50(a)(6)(B). Such extensions must be "closed only at the office of the lender, an attorney at law, or a title company." Tex. Con. Art. XVI, § 50(a)(6)(N). In determining the "fair market value" of the homestead, "[a] lender or assignee for value may conclusively rely on the written acknowledgement as to the fair market value of the homestead property . . . if (1) the value acknowledged to is the value estimate in an appraisal or evaluation prepared in accordance with a state or federal requirement . . . and (2) the lender or assignee does not have actual knowledge at the time of the payment of value or advance of funds by the lender or assignee that the fair market value stated in the written acknowledgment was incorrect. " Tex. Const. art. XVI, § 50(h). The Texas Constitution further states that "[n]o . . . lien on the homestead shall ever be valid unless it secured a debt described by this section." Tex. Const. art. XVI, § 50(c).

In her amended complaint, Johnson alleges that the lien securing the home-equity note violated Article XVI section 50 of the Texas Constitution on the date the extension of credit was made. Specifically, Johnson asserted that the fair market value of Trevino's homestead was lower than the $74,000.00 loan amount and therefore in violation of the 80 Percent Rule. In other words, if the property value is lower than $92,500.00, then then loan violates the Texas Constitution because 80% of $92,500.00 is $74,000, the principal amount of the loan. As evidence of the property value, Johnson points to a tax appraisal from 2006 valuing the property at $70,880.00. Am. Compl. 8, ¶ 26. Further, Johnson alleges that Trevino's acknowledgment that the property was worth $94,500.00 should be disregarded because "there is no evidence that she [Trevino] received an appraisal or that it had in fact been performed . . . nor that a Uniform Residential Appraisal Report was provided with the closing documents." Am. Compl. 7, ¶ 25.

In their motion to dismiss, defendants claim that the plaintiffs here failed to state a claim for violation of the Texas Constitution for two reasons. Mot. 3–5, ECF No. 9. First, there is no

separate recourse for a constitutional violation, and a four-year statute of limitations precludes suit here. Mot. 4, ¶ 9. Second, defendants' attached exhibits foreclose the argument that no appraisal was done. Mot. 4, n. 3. The Court addresses the two arguments below.

> a. *The Texas Constitution does not create a separate right of action for asserting defective liens, and the relevant statutes of limitation bar plaintiffs' claim here.*

Defendants, in their motion to dismiss, argue that a borrower does not have constitutional recourse for asserting that a lien is defective under the Texas Constitution. Rather, a borrower must rely on traditional causes of action under tort or breach of contract theories of recovery. Further, defendants argue, even if a plaintiff *did* have separate constitutional recourse, Texas' four-year residual statute of limitations would apply and the claim would have accrued at the time a wrongful act causes a legal injury—*i.e.* at the moment the closing documents were signed. Thus, according to defendants, any separate claim for a constitutional violation accrued when the homeowner, Trevino, signed the closing documents on September 6, 2006. This would have required Johnson to challenge the defective lien instrument by September 6, 2010 or lose the ability to challenge it at all.[5] The instant suit falls well outside that period.

At the outset, the Court notes that Johnson's response to the motion to dismiss failed to even address defendants' arguments, arguing solely that defendants are judicially estopped from denying the maturity and acceleration of the note occurred on June 7, 2012. Johnson's response is entirely focused on a different four-year statute of limitations, which required lienholders to exercise the power to foreclose within four years of the accrual of a foreclosure cause of action. TEX. CIV. PRAC. & REM CODE § 16.035. In their reply, defendants argue that Johnson's failure to respond is either abandonment or concession of the constitutional claims, and they urge this Court

---

[5] The homeowner-borrower, Alice A. Trevino, died on January 22, 2010.

to grant the motion to dismiss accordingly. Normally, this Court would take the failure to respond as abandonment of those claims. However, the amended complaint also served as a response to defendants' initial motion to dismiss, which included nearly identical language used to argue that the residual statute of limitations barred claims for constitutional defects. It is therefore unclear whether Johnson actually intended to abandon or concede those arguments, or whether Johnson chose not to respond—a generally unwise strategy—because she was relying on the amended complaint to refute defendants' statute of limitations argument. The Court will err on the side of caution and incorporate Johnson's arguments in the amended complaint into her response as well.

Johnson's arguments are unconvincing. She argues that a statute of limitations does not apply to challenges of constitutionally noncompliant home-equity loans. Am. Compl. 9, ¶ 28 (citing *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542 (Tex. 2016)). For support, Johnson points to the Texas Supreme Court's recent holding that the "[Texas] Constitution's plain text compels that [the] homeowner's right to seek a declaration of an invalid lien not be bound by a statute of limitations." *Id.* However, Johnson's argument fails because she omitted the Texas Supreme Court's next sentence: "As such, no statute of limitations applies to this type of *quiet-title action.*" *Wood*, 505 S.W.3d at 550 (emphasis added). The Texas Supreme Court did not hold that *any* challenge to a constitutional defect avoids the applicable statute of limitation for that cause of action. That holding applies only to quiet title actions.

Indeed, the *Wood* Court emphasized in a contemporaneous holding that section 50(a) does not create substantive rights beyond a defense to foreclosure, and that there is no separate right of action. *Wood*, 505 S.W.3d at 546; *Garofolo*, 497 S.W.3d at 478, 484. Instead, the Texas Supreme Court emphasized that borrowers may assert constitutional violations as a defense to foreclosure actions brought by lienholders or by filing their own substantive cause of action, such as a breach

of contract or a quiet title action.[6] *Id.* Thus, a plaintiff does not state a claim merely by alleging

constitutional violations of section 50(a). To state a claim, a plaintiff must plead such violations

in the context of a properly plead cause of action. The relevant statutes of limitations for those

causes of action control. The Texas Constitution does not include a separate limitations period for

raising constitutional defects.

The Texas' residual statute of limitations states that "[e]very action for which there is no

express limitations period, except an action for the recovery of real property, must be brought not

later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE §

16.051. The Fifth Circuit has previously held that Texas' residual statute of limitations applies to

claims raising constitutional infirmities. *See e.g. Priester v. JP Morgan Chase Bank*, 708 F.3d 667,

674 (5th Cir. 2013); *Thompson v. Deutsche Bank Nat'l Trust Co.*, 775 F.3d 298 (5th Cir. 2014);

*Nunez v. CitiMortgage, Inc.*, 606 Fed. App'x 786, 790 (5th Cir. 2015); *Kramer v. JP Morgan

Chase Bank, NA.*, 574 Fed. App'x 370, 375 (5th Cir. 2014). Those holdings were based in large

part on state appellate decisions concluding that the four-year statute of limitations applied to

constitutional and fraudulent lien causes of action. *Priester*, 708 F.3d 673 (citing *Rivera v.

Countrywide Home Loans, Inc.*, 262 S.W.3d 834, 839 (Tex. App.—Dallas 2008, no pet.) and

*Schanzle v. JPMC Specialty Mortg. LLC*, No. 03–09–00639–CV, 2011 WL 832170, at *4 (Tex.

App.—Austin Mar. 11, 2011, no writ)). Those cases were explicitly abrogated by the Texas

Supreme Court in *Wood*, 505 S.W.3d at 548, but only insofar as they suggested a statute of

limitations worked to bar all possibility of borrowers raising constitutional defects outside of the

---

[6] "A suit to quiet title is an equitable action used to establish that an adverse party's claim to property is invalid, and to remove the cloud caused by the invalid claim from the owner's title." *Montenegro v. Ocwen Loan Servicing, LLC*, 419 S.W.3d 561, 572 (Tex. App. —Amarillo 2013, pet. denied) (citing *Vernon*, 390 S.W.3d 47, 61 (Tex. App.—El Paso 2012, pet. denied)). A quiet title action is equitable in nature, seeking equitable, declaratory relief rather than monetary damages. *Id.* "The elements of the cause of action to quiet title are that the plaintiff must show (1) an interest in a specific property, (2) title to the property is affected by a claim by the defendant, and (3) the claim, although facially valid, is invalid or unenforceable." *Vernon*, 390 S.W.3d at 61.

relevant period. The *Wood* holding is clear and narrow: there is no statute of limitations for quiet title claims. *Wood* does not grant a plaintiff a free pass to ignore statutes of limitations when challenging a constitutionally defective instrument via other causes of action.

As noted above, section 50(a) of the Texas Constitution does not create a substantive right beyond a defense to foreclosure. A plaintiff affirmatively raising constitutional defects must do so via a substantive cause of action, such as breach of contract or a quiet title action. While *Wood* makes clear that no statute of limitations applies to quiet title actions, it does not similarly excuse other substantive causes of action from their respective statutes of limitations. Thus, unless a plaintiff asserts a quiet title claim, a court must apply the applicable statute of limitations. Critically, plaintiff has not asserted a quiet title claim here. Accordingly, the Court must apply to relevant statutes of limitation to the substantive claims raised in plaintiff's amended complaint: breach of contract, negligence, TDCA, usury, and fraud. The Court addresses the applicable statutes of limitation in the analysis for each respective claim below. Because the Court has determined that those claims are time-barred, plaintiff has failed to state a claim for violations of the Texas Constitution under which relief may be granted.

> *b.  The attached documents clearly establish that Trevino reviewed a property appraisal when signing the closing documents.*

Defendants also argue that Johnson's assertion that there is no evidence that Trevino received an appraisal or that one was done is easily refutable. Defendants attached documents to the motion to dismiss showing an appraisal report was prepared by Adobe Mortgage Corporation on August 11, 2006. Ex. G, ECF No. 10–1. The appraised value was listed as $92,500.00. *Id.* Defendants also attached a copy of a notice of right to receive a copy of the appraisal report, signed by Trevino on August 19, 2006. Ex. F, ECF No. 10–1. Less than a month later, Trevino signed

the closing documents, including an acknowledgement as to the fair market value of the homestead property at $92,500.00.

Normally, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). However, the Fifth Circuit has allowed the consideration of documents that a defendant attaches to the motion to dismiss as "part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* Defendants ask this Court take judicial notice of these documents because they are central to Johnson's claims and are specifically mentioned in the amended complaint. Further, Johnson has not objected to the inclusion of any of these attached documents. In fact, Johnson did not even respond to defendants' argument that Trevino <u>did</u> receive an appraisal on the property for $92,500.00 prior to signing the closing documents for her credit extension.

The amended complaint clearly referenced these documents. More accurately, she alleged the absence of <u>any</u> evidence that Trevino "received an appraisal or that it had in fact been performed," or "that a Uniform Residential Appraisal Report was provided with the closing documents." Am. Compl. 7, ¶ 25. Further, such documents are central to her claim that the note, and the lien securing it, are invalid under the Texas Constitution. Thus, the Court considers these documents part of the pleadings. In attaching these documents, defendants "merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Collins*, 224 F.3d at 499.

The Court determines that Johnson has not stated a claim for violation of Article XVI, § 50(a) of the Texas Constitution. These documents show that an appraisal was conducted on the property, that the appraisal was for $92,500.00, and that Trevino received the appraisal. Combined

with the factual allegations that Johnson already included in her pleading—*e.g.* that Trevino signed an acknowledgement of fair market value of her property for $92,500.00—Johnson fails to allege any facts that support the claim for a constitutional violation of the 80 Percent Rule under Texas Constitution Article XVI, section 50(a).

The only other factual allegation that Johnson raises to support her claim for a violation of the 80 Percent Rule is that "the 2006 Bexar County Tax records indicate that the fair market value of the property in 2006 was $70,880.00. Am. Compl. 4, ¶ 10. But Johnson, in her own complaint, also acknowledged that "[u]nder Texas law, tax valuations are legally insufficient evidence of [fair market value]." Am. Compl. 8, ¶ 26 (citing *Poswalk v. GMAC Mortg., L.L.C.*, 519 Fed. App'x 884 (5th Cir. 2013)). Indeed, "value placed upon real property for tax assessment purposes . . . is not evidence of its value for purposes other than taxation." *United States v. Curtis*, 635 F.3d 704, 718 n. 50 (5th Cir. 2011) (quoting *Dallas Cnty. Bail Bond Bd. v. Black*, 833 S.W.2d 247, 249 (Tex. App.—Dallas 1992, no writ)). Based on Texas' clear law that tax valuations <u>do not</u> constitute evidence of fair market value, Johnson may not rely on that assertion to state a claim for violation of the Texas Constitution. Further, the Texas Constitution is clear that a lender "may conclusively rely on the written acknowledgement as to the fair market value of the homestead property" if the value is the same as an estimate in an appraisal prepared in accordance with a state or federal requirement and the lender does not have any actual knowledge that the fair market value is incorrect. Tex. Const. art. XVI, § 50(h). Johnson has not alleged that the appraisal was not in accordance with a state or federal requirement, nor has she alleged that defendants here had actual knowledge that the fair market value was incorrect. Coupled with the attached appraisal documents signed by Trevino, Johnson's failure to raise any other defect with the

acknowledgement constitutes a failure to state a claim that the Texas Constitution was even violated.

Accordingly, Johnson has failed to raise a claim for violations of the Texas Constitution upon which relief may be granted. The claim will therefore be dismissed pursuant to Rule 12(b)(6).

### 2. Breach of Contract

In her amended complaint, Johnson alleges that CitiMortgage has committed a material breach of a contract with Alice Trevino. Specifically, she alleges that at the time of the closing, and throughout the term of the loan, the loan was not in compliance with the Texas Constitution. Defendants argue that Johnson failed to state a breach of contract claim because (1) any breach is based on a purported violation of the Texas Constitution, which is now barred by the statute of limitations, and (2) Johnson did not identify any provision of the loan document that was breached, or even that a provision of the document *required* compliance with the Texas Constitution. Mot. 8–9, ECF No. 9.

Again, Johnson has addressed neither of these arguments in her response to the motion to dismiss. In their reply, defendants argue that Johnson's failure to respond is either abandonment or concession of these claims, and they urge this Court to grant the motion to dismiss accordingly. Normally, this Court would take the failure to respond as abandonment of those claims. However, the amended complaint includes some language addressing the statute of limitations argument. The Court will therefore incorporate those arguments as responsive to defendants' motion to dismiss the amended complaint.

Defendants argue that the claim is barred by the four-year residual statute of limitations under Tex. Civ. Prac. & Rem. Code § 16.051. *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (applying the four-year statute of limitations to breach of contract claims). A breach of contract

accrues at the time of breach. *Smith v. Fairbanks, Morse & Co.*, 101 Tex. 24, 102 S.W. 908, 909 (1907). Here, the purported breach was at the time the loan was made—*i.e.* the date of closing, September 6, 2006. *See Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 17 n. 28 (Tex. 2014) ("[N]othing in Section 50 suggests that a loan's compliance is to be determined at any time other than when it is made."). Thus, under this four-year statute of limitations, Johnson was required to raise a breach of contract claim by September 6, 2010. This case was filed in 2016, well outside this limitations period. Thus, Johnson has failed to state a claim for breach of contract because the claim is time-barred. The Court need not reach defendants' second argument that Johnson has failed to allege a specific provision of which defendants are in breach.[7]

### 3. Negligence

In her amended complaint, Johnson also alleges that the defendants' acts, and resulting damages, were proximately caused by the negligence. Defendants argue that Johnson failed to state a negligence claim. That is, defendants argue that Johnson did not allege facts that suggest defendants owed a legal duty to the plaintiffs here, the nature of any damages suffered, or that the damages were proximately caused by an alleged breach of a legal duty owed. Mot. 10. Further, defendants argue that a negligence claim is subject to a two-year statute of limitations, which has long since run. *Id.* at 11. Finally, defendants claim that the economic loss doctrine barred a

---

[7] "To plead a breach of contract claim, a plaintiff must identify a specific provision of the contract that was allegedly breached." *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.* 995 F. Supp. 2d 587, 602–03 (N.D. Tex. 2014). As noted, the only material breach alleged is for the purported violation of the 80% Rule under Texas Constitution art. XVI, section 50(a). Defendants argue that plaintiff has pointed to no provision of the loan document that was breached, or that even required compliance with the Texas Constitution. Presumably, this could be section 19 of the loan document, which states that "It is Lender's and Borrower's intention to confirm strictly to provisions of the Texas Constitution applicable to Extensions of Credit as defined by Section 50(a)(6), Article XVI of the Texas Constitution." Security Instrument 11, ¶ 19, Ex. A, ECF No. 6–1. However, plaintiff did not plead as such in either her original or amended complaint, nor did she even respond to this argument her response to the motion to dismiss.

negligence claim, and that Johnson is attempting to repackage a breach of contract claim as a negligence action. *Id.*

Again, Johnson has addressed none of these arguments in her response to the motion to dismiss. Because Johnson's claims are time-barred under a four-year statute of limitations, the Court finds that these claims are time-barred under the two-year statute of limitations as well. Further, unlike with the claims for violation of the Texas Constitution or breach of contract, Johnson did not include any counter arguments in her amended complaint that this Court may incorporate here. The Court therefore finds that Johnson has abandoned these claims by failing to even raise a counter argument to defendants' motion to dismiss. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584 n. 1 (5th Cir. 2006) (citing with approval *Vela v. City of Houston*, 271 F.3d 659, 678–79 (5th Cir. 2001)). The Court will therefore dismiss the claims for negligence as time-barred and abandoned.

### 4. Texas Debt Collection Act (TDCA)

In her amended complaint, Johnson also alleges that defendant CitiMortgage created a loan that violated the Texas Constitution and sent notices of acceleration threatening to foreclose on the Johnson's homestead based on a constitutionally invalid lien. According to Johnson, such conduct constitutes a violation of the TDCA because "Defendants threatened and executed an action prohibited by law and Plaintiff suffered damages for which they now sue as provided by the Act." Am. Compl 17. Defendants argue that Johnson failed to state a claim under the TDCA because she did not allege any facts to show defendants are debt collectors, or that defendants used "threats, coercion, or attempts to coerce" in connection with the Rule 736 foreclosure. Defendants also argue that the claim is barred by the two-year statute of limitations for TDCA claims. TEX. CIV. PRAC. & REM. CODE § 16.003(a).

Again, Johnson has addressed none of these arguments in either her amended complaint or the response to the motion to dismiss. For the reasons noted above, the TDCA claims are time-barred under the applicable two-year statute of limitations and have also been abandoned. The Court will therefore be dismiss the TDCA claims.

### 5. Usury

In her amended complaint, Johnson alleges that defendant CitiMortgage charged a usurious interest rate as defined by the Texas Finance Code § 305.001(a). Am. Compl. 17–18. Under that provision, a creditor who contracts for, charges, or receives interest in excess of what is authorized by the Finance Code is liable for a money award to the obligor. Johnson alleges that defendants charged and received interest that was constitutionally defective in that it exceeded 80% of the fair market value of the home at the time the extension of credit was made. Johnson's argument seems to be that if it is not authorized by the Texas Constitution, it cannot be proper under the Texas Finance Code.

"A usurious transaction is composed of three elements. There must be (1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower." *First Bank v. Tony's Tortilla Factory, Inc.*, 877 S.W2d 285, 287 (Tex. 1994). Defendants argue that Johnson failed to state a claim for usury because she did not allege what interest rate was charged, or that it exceeded what is allowed by law. Thus, plaintiff did state any facts to show that defendants exacted a "greater compensation than allowed by the law for the use of the money by the borrower." Mot. 15. Defendants also argue that the suit is barred by a four-year statute of limitations for usury actions. TEX. FIN. CODE § 305.006. Finally, defendants argue that Johnson has not alleged that either

25

Johnson or Trevino actually paid the purportedly usurious interest rate, as it is undisputed that the loan was in default. Mot. 15.

Again, Johnson has addressed none of these arguments. The Court also finds that Johnson has failed to allege that defendants exacted a greater compensation than allowed by law—an essential element to a usury claim—because there is no allegation that Johnson or Trevino actually paid under the usurious rate. Further, for the reasons noted above, the usury claim is time-barred under the applicable four-year statute of limitations and have been abandoned by Johnson's failure to respond. The usury claim will therefore be dismissed.

### 6. Fraud

In her amended complaint, Johnson also alleges that defendants initiated a fraud against real property in violation of Tex. Civ. Prac. & Rem. Code 12.002. That provision states that a person "may not make, present, or use a document or other record with knowledge that the document or other record is a fraudulent . . . claim against real or personal property . . . [with] intent that the document . . . be given the same legal effect as a court record . . . evidencing a valid lien or claim against real or personal property . . . and [with] intent to cause another person to suffer . . . financial injury." TEX. PRAC. & REM. CODE § 12.002(a).

Defendants argue that plaintiffs have "entirely failed to allege facts sufficient to support any claim for violation of section 12.002. Mot. 16. Specifically, defendants argue that Johnson failed to allege facts that show:

> Defendants (1) made, presented, or used the Deed of Trust with (2) knowledge that the Deed of Trust is a fraudulent court record or a fraudulent lien or claim against real or personal property or an interest in real or personal property and (3) intended that the Deed of Trust be given the same legal effect as a court record or document of a court created by or established under the constitution or laws of Texas or the United States evidencing a valid lien or claim against real or personal property or an interest in real or personal property, and (4) intended to cause another person to

suffer: (A) physical injury; (B) financial injury; or (C) mental anguish or emotional distress.

*Id.* Defendants also argue, again, that the fraud claim is barred by a four-year statute of limitations.

Again, Johnson has addressed none of these arguments. For the reasons noted above, the fraud claims are time-barred under the applicable four-year statute of limitations and have also been abandoned by Johnson's failure to respond. The fraud claim will therefore be dismissed.

### 7. Declaratory Relief

In her amended complaint, Johnson alleges that the note, and the lien securing it, are void because it violates the Texas Constitution by extending credit against a homestead that exceeds 80% of the fair market value. Am. Compl. 13. Johnson alleged this violation in the above causes of action, and the Court will not repeat its analysis regarding that claim here. However, she also alleges that the right to foreclose is void because foreclosure is barred by the statute of limitations on foreclosure actions: Tex. Civ. Prac. & Rem Code § 16.035. Under the § 16.035 claim, Johnson argues that defendants should be judicially estopped from denying that the note was accelerated on June 7, 2012 based on representations made in a foreclosure application in 2014. Am. Compl. 11, ¶ 34. Further, Johnson seeks a declaration and an award of attorney's fees under the Declaratory Judgment Act, Tex. Civ. Prac. & Rem. Code § 37.001, *et seq*.

The Texas Civil Practice and Remedies Code does not create a separate substantive right of action for violations of the four-year statute of limitations regarding foreclosure actions, but the amended complaint incorporates the § 16.035 arguments in the request for declaratory relief. Accordingly, while Johnson has alleged the constitutional violation through several causes of

action listed above, the Court construes the amended complaint as articulating the Declaratory Judgment Act as the sole vehicle for bringing the § 16.035 claim.

Defendants argue that Johnson has failed to state a claim for declaratory relief because the Declaratory Judgment Act "is merely a procedural device [and] does not create any substantive rights or causes of action." *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n. 3 (5th Cir. 1996). *See also Texas Dep't of Transp. v. Sefzik*, 355 S.W.3d 618, 621–22 (Tex. 2011) ("[T]he UDJA does not enlarge the trial court's jurisdiction but is merely a procedural device for deciding cases already within a court's jurisdiction."). Thus, according to defendants, "a declaratory judgment is predicated on the viability of the underlying causes of action pleaded in the petition." Mot. 18, ¶ 41. That is, because none of the above substantive causes of action are viable, Johnson's request for a declaratory judgment for violations of § 16.035 cannot survive. *Id.* (citing *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n. 3 (5th Cir. 1996) and *Sledge v. JP Morgan Chase Bank, NA.*, No. SA:13-cv-797-XR, 2014 WL 51169, at *5 (W.D. Tex. Jan. 7, 2014)). Further, defendants argue that Johnson fails to state a claim for violation of § 16.035 because she did not sufficiently allege that the loan was accelerated before December 2015. Mot. 7, ¶ 7. A 2015 acceleration would place this suit firmly *within* the four-year statute of limitations. *Id.* Finally, defendants argue that Johnson's judicial estoppel argument—*i.e.* that defendants are estopped from denying that the acceleration occurred in 2012 based on U.S. Bank's June 2016 foreclosure application—is erroneous. *Id.* at ¶ 9.

Johnson again failed to respond to the arguments regarding violations of the Texas Constitution. For the reasons already articulated, the above substantive causes of action regarding the claims for constitutional violations will be dismissed as time-barred. However, the claim

regarding Tex. Prac. & Rem. Code § 16.035 is addressed in her response. Thus, unlike some of the other claims above, Johnson has clearly not abandoned the § 16.035 claim. The Court will therefore assess whether plaintiffs may seek declaratory relief for purported violations of the Texas Constitution and § 16.035. For the reasons articulated below, Johnson has failed to state a claim for declaratory relief.

### a. Johnson's § 16.035 Claim

In Texas, an action for foreclosure or the forced sale of real property lien must be brought within four years of the day a cause of action accrues. TEX. CIV. PRAC. & REM. CODE § 16.035(a)-(b). When this four-year period expires, the property lien and the power to force the sale or enforce the lien becomes void, and the property may no longer be foreclosed upon. TEX. CIV. PRAC. & REM. CODE § 16.035(d); *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 567 (Tex. 2001). Under Texas law, if a note secured by a real property lien is accelerated pursuant to the terms of the note, then the date of accrual becomes the date the note was accelerated. *Burney v. Citigroup Global Markets Realty Corp.*, 244 S.W.3d 900, 903 (Tex. App.—Dallas 2008, no pet.). If the note or deed of trust contains an option, the action accrues only when the holder actually exercises that option and accelerates the note. *Holy Cross*, 44 S.W.3d at 566.

Acceleration requires two acts (1) notice of intent to accelerate and (2) notice of acceleration. *Id.* These notices must be clear and unequivocal. *Id.* However, after the requisite notice of intent to accelerate, the actual notice of acceleration is not required to include particular language or take a particular form, so long as the acceleration of the debt is clear and unequivocal. *See Burney*, 244 S.W.3d at 903–04 (allowing the filing of an expedited foreclosure action to serve as notice of acceleration). Once these notices are given, the lienholder must either seek to enforce the lien within four years or abandon the acceleration. Acceleration of a note can be abandoned

by agreement of the parties or other unilateral actions of the lender, such as sending a notice of default requesting less than the full amount of the loan or accepting payments without exacting any available remedies. *Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015); *Alcala v. Deutsche Bank Nat'l Trust Co. for Long Beach Mortgage Loan Trust 2006–5*, 2017 WL 1279227, at * 2 (5th Cir. April 6, 2017); *Holy Cross*, 44 S.W.3d at 566–67. Abandonment of acceleration has the effect of restoring the contract to its original condition, including restoring the note's maturity date and resetting the four-year statute of limitations. *Holy Cross*, 44 S.W.3d at 566. However, if the lienholder does not file suit or abandon the acceleration within four years, the lien becomes void and the property may no longer be foreclosed upon by that lienholder. *Id.* at 567; TEX. CIV. PRAC. & REM. CODE § 16.035(d).

Johnson's § 16.035 claim is based entirely around her argument that defendants "effectively accelerated the Note as of June 7, 2012" and are judicially estopped from denying that the note was accelerated in June 2012. Am. Compl. 10, ¶¶ 32–36; Resp. 4, ¶¶ 14–21. Specifically, Johnson alleges that on May 2, 2012, CitiMortgage notified Johnson of its intent to accelerate the note if past due amounts were not paid by June 7, 2012. Am. Compl. 4, ¶ 14. This default was never cured, and plaintiff alleges that the note was accelerated at some point between 2012 and November 21, 2014 (when a balance statement listed the note as accelerated). *Id.* at ¶ 15. By arguing that the note was "effectively accelerated" on June 7, 2012, Johnson appears to assume that the acceleration occurred as soon as she failed to cure the default on the date set forth in May 2nd letter.

Further, Johnson argues that in a 2014 application for foreclosure CitiMortgage claimed that the "requisite notice(s) to cure default and accelerate maturity of the debt had been mailed to each person under applicable law." Resp. 5, ¶ 18. According to Johnson, defendants attached the

30

May 2, 2012 letter to the application as evidence of the notices required under Texas law to foreclose on the property. *Id.* Thus, Johnson argues that defendants have represented to a prior court that the note was accelerated by the 2012 letter, and this Court should consider the note "effectively accelerated" as of June 7, 2012. If the note was accelerated under that timeline, CitiMortgage would have been required to initiate foreclosure proceedings within four years—by June 7, 2016—or the lien would be void under Tex. Civ. Prac. & Rem. Code § 16.035. Thus, according to Johnson, the lien here was void by the time CitiMortgage filed their application for foreclosure on June 14, 2016.

> *b. Plaintiffs' declaratory action fails because there is no basis for the above substantive actions.*

As defendants correctly note, the Fifth Circuit has held that the Texas Declaratory Judgment Act is a "merely a procedural device" and does not create substantive rights or causes of action. *Sid Richardson*, 99 F.3d at 752 n. 3. Further, the Fifth Circuit has held that the Texas Declaratory Judgment Act, as a procedural rule, does not apply when removed to federal court. *See Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). "[F]ederal district courts have taken that to mean that when a declaratory judgment action filed in state court is removed to federal court, 'that action is in effect converted into one brought under the federal Declaratory Judgment Act.'" *Scott v. Bank of America, N.A.*, 2013 WL 1821874, at * 9 (W.D. Tex. April 29, 2013) (citing *Redwood Resort Props., LLC v. Holmes Co.*, No. 3:06–CV–1022–D, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007)).

Like the Texas version, the federal Declaratory Judgment Act is remedial only. To be entitled to declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, a plaintiff must allege facts demonstrating that there exists "a substantial and continuing

controversy between the two adverse parties." *Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003). In other words, like the Texas version of the law, the federal Declaratory Judgment Act requires an interest related to an underlying cause of action under federal law. *See Collin Cnty., Tex. v. Homeowners Ass'n for Values Essential to Neighborhoods, (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990) ("[I]t is the underlying cause of action . . . that is actually litigated in a declaratory judgment action . . . ."). A declaratory action merely allows for early adjudication of a controversy arising under that substantive cause of action.

Thus, a request for declaratory action cannot stand alone. "Accordingly, district courts dismiss requests for declaratory relief when all pleaded causes of action fail." *Sledge*, 2014 WL 51169 at *5. As noted above, all of the substantive causes of action fail because they are either time-barred, abandoned, or insufficiently plead, or some combination of all three. Because there is no separate cause of action under which plaintiffs may allege constitutional violations in a lien instrument, and because the above causes of action have all failed, Johnson has failed to state a claim for constitutional violations upon which declaratory relief may be granted.

Similarly, there is no separate cause of action for violations of § 16.035, and Johnson did not allege any separate cause of action for a violation of § 16.035 in her amended complaint (such as a quiet-title action). Rather, she relied solely on Texas' Declaratory Judgment Act. That is insufficient. More surprisingly, Johnson did not even raise an argument as to why her action for declaratory relief should survive the motion to dismiss, given the failure of the other substantive causes of action. Thus, the Court finds that there is no substantive underlying cause of action for Johnson's request for injunctive relief. Johnson's claim should therefore be denied because she has failed to state a claim for which relief may be granted.

Simply put, the alleged facts in the amended complaint do not sufficiently plead a violation of § 16.035. Violation of § 16.035 is dependent on the accrual of the cause of action, which is measured on the date of maturity of the note. TEX. CIV. PRAC. & REM CODE § 16.035(e). "If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross*, 44 S.W.3d at 566. Under Texas law, acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *Holy Cross*, 44 S.W.3d at 566. Thus, the four-year deadline begins to run on the date of acceleration. A plaintiff asserting a violation of § 16.035 must plead facts establishing the date of acceleration.

It is undisputed that the instrument here contained an option to accelerate the note. Therefore, the acceleration only accrued when the defendants actually sent both the notice of intent to accelerate and the notice of acceleration. But Johnson's allegations fail to establish that separate and independent notices were sent—and when they were sent—regarding both the intent to accelerate and the actual acceleration as required by Texas law. Johnson does allege that the notice of intent to accelerate was sent May 2, 2012, but she <u>does not</u> allege when the notice of acceleration was sent. Am. Compl. 4, ¶ 14. Rather, Johnson merely alleges that the note <u>was</u> accelerated. *Id.* 5, ¶ 15.

Johnson seems to imply (or assume) that because the default was not cured by June 7, 2012, the date set forth in the May 2nd letter, that the note was "effectively accelerated" on that date. *Id.* 10, ¶ 33. But plaintiffs' default does not ipso facto start limitations running on the note. Johnson has not actually alleged when a notice of acceleration was sent. Nor has she alleged that

33

defendants' foreclosure was unlawful based on their failure to send an acceleration notice. Her conclusory allegation that the not "was" effectively accelerated is insufficient. *See Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994) ("In order to avoid dismissal for failure to state a claim . . . a plaintiff must plead specific facts, not mere conclusory allegations.") (internal citation omitted); *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."). Rather, plaintiffs were required to allege facts supporting her claim that the note was accelerated on June 7, 2012. They did not, and in failing to do so failed to allege facts to support a claim that defendants' foreclosure violated § 16.035.[8]

Because plaintiffs have failed to raise a substantive cause of action through which they can seek declaratory relief, and because they have failed to state a claim for violation of § 16.035 in the first place, those claims will be dismissed.

## IV.   CONCLUSION

For the reasons stated above, the motion to remand will be denied. The Court finds no reasonable basis for the district court to predict that the plaintiffs here might be able to recover against the "substitute trustee" defendants. The substitute trustees will be dismissed and the Court need not consider them for purposes of assessing diversity of the parties here. Accordingly, the Court finds complete diversity exists.

Further, the motion to dismiss will be denied because plaintiffs have failed to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

[8] Defendants dispute the judicial estoppel argument that the 2014 foreclosure application represented that the note was accelerated in June 2012. However, because the alleged facts fail to establish a date on which a notice of acceleration was actually sent, plaintiffs have failed to state a claim for violation of § 16.035 and the Court need not consider whether judicial estoppel would prohibit defendants from denying that acceleration occurred on June 7, 2012.

Procedure.  Johnson's substantive claims are either time-barred, abandoned, or fail to sufficient plead facts allowing a reasonable inference of recovery.

The claim for declaratory relief must also be dismissed because it is a theory of recovery with no predicate cause of action.  Also, Johnson's own alleged facts establish that any purported acceleration triggering the § 16.035 limitations period was abandoned in 2015.  Therefore, the 2016 foreclosure action does not fall outside the four-year limitations period.

Accordingly, because all plaintiffs' claims have been dismissed, this case will be dismissed.  A separate order shall issue.

DATE:  8/3/17

Royce C. Lamberth
United States District Judge